UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Changshan Li,                                            File No. 22-cv-1665 (ECT/DLM)

       Plaintiff,

v.                                                      **OPINION AND ORDER**

New Asia Chinese Restaurant Wan Da Inc.
and Hong Sheng Lin,

       Defendants.

Ge Qu and Jian Hang, Hang & Associates, PLLC, Flushing, NY, and Charlie R. Alden, Gilbert Alden Barbosa PLLC, Burnsville, MN, for Plaintiff Changshan Li.

Hong Sheng Lin, *pro se*.

       Changshan Li worked as a delivery driver for Defendant New Asia Chinese Restaurant, which was owned and managed by Defendant Hong Sheng Lin. Mr. Li sued New Asia and Mr. Lin under federal and state labor laws for failure to pay a minimum wage, failure to pay overtime, failure to provide written notice of his wage rate and earnings statements, and retaliation for asserting his statutory rights. Each claim hinged on Mr. Li's status as an employee or an independent contractor—if he were New Asia's employee, he could recover; if he were an independent contractor, he could not.

       The case went to trial, where a jury determined that Mr. Li was an employee, made special findings relevant to that determination, and found that Defendants were liable on all claims but retaliation. The jury's verdict did not, however, resolve the case. Under

Eighth Circuit precedent, the decisive question whether a worker is an employee or independent contractor is a legal issue to be resolved by the court. That issue was submitted for post-trial briefing and is ripe for a decision.

Having observed the evidence and testimony firsthand at trial, having reviewed the jury's verdict and special findings, and having considered the post-trial briefing, I determine that Mr. Li was an independent contractor. The relevant factors don't all point one way, but the most important one—degree of control—strongly supports the determination that Mr. Li was an independent contractor. And the jury's special findings all favored that status, even though the jury's bottom-line conclusion did not. On the other hand, those factors that support employee status were close calls, mitigated by other considerations, or based on a thin evidentiary record. They deserve much less weight in final analysis. Judgment will be entered in Defendants' favor.

I

The Fair Labor Standards Act (FLSA) requires employers to pay their employees a minimum wage, 29 U.S.C. § 206(a)(1)(C), and prohibits an employer from "'employ[ing] any of his employees . . . for a workweek longer than forty hours' without paying one-and-one-half times the regular rate for any excess hours," *Karlson v. Action Process Serv. & Private Investigations, LLC*, 860 F.3d 1089, 1092 (8th Cir. 2017) (quoting 29 U.S.C. § 207(a)(1)). These regulations apply to employers and employees, not independent contractors. *Karlson*, 860 F.3d at 1092; *cf.* 29 U.S.C. § 203(r)(1) (excluding from the definition of "enterprise" activities performed "by an independent contractor"). The FLSA defines an "employee" as "any individual employed by an employer," 29 U.S.C.

§ 203(e)(1), and to "employ" as "to suffer or permit to work," 29 U.S.C. § 203(g). It does not define "independent contractor." *See* 29 U.S.C. § 203 (providing definitions).

The Minnesota Fair Labor Standards Act (MFLSA) is similar. Employers must pay employees a minimum wage, Minn. Stat. § 177.24, subdiv. 1, and may not "employ an employee for a workweek longer than 48 hours" without paying a time-and-a-half wage, Minn. Stat. § 177.25, subdiv. 1. Relevant here, the MFLSA also requires employers to "make and keep a record of . . . the rate of pay, and the amount paid each pay period to each employee . . . the hours worked each day and each workweek by the employee." Minn. Stat. § 177.30(a)(2)–(3). Minnesota law defines an employee as "any individual employed by an employer," and to "employ" means "to permit to work." Minn. Stat. § 177.23, subdivs. 5, 7. Like its federal counterpart, the MFLSA does not define "independent contractor." *See* Minn. Stat. § 177.23 (providing definitions).

A related statute, the Minnesota Prevailing Wage Act (MPWA) mandates that, "[a]t the start of employment, an employer shall provide each employee a written notice" containing the employee's pay rate, Minn. Stat. § 181.032(d)(1), and that an "employer shall provide each employee an earnings statement" for "each pay period," including wage rate and hours worked, Minn. Stat. § 181.032(a), (b)(2), (b)(4). Further, under the MPWA an employer must not retaliate against an employee for asserting MFLSA and MPWA rights. Minn. Stat. § 181.03, subdiv. 6 (2022).

Like the FLSA, the MFLSA and the relevant provisions of the MPWA apply to employees and employers, not to independent contractors. *Muhonen v. Mosier*, No. A13-1384, 2014 WL 1660711, at *2 (Minn. Ct. App. Apr. 28, 2014); *see In re Kokesch*,

411 N.W.2d 559, 562 (Minn. Ct. App. 1987); *Milner v. Farmers Ins. Exch.*, 748 N.W.2d 608, 617 (Minn. 2008) (stating that the MFLSA and the MPWA "together . . . provide a comprehensive statutory scheme for wages and payment in Minnesota and should be interpreted in light of each other"). While some provisions of the MPWA apply to independent contractors, *see* Minn. Stat. § 181.145, subdiv. 1, only the employee-employer provisions are at issue here, *see* ECF No. 1 ¶¶ 136–57 (Counts VIII through X, the MPWA causes of action); Minn. Stat. § 181.032(a)–(b), (d) (requiring employers to provide employees with certain information); Minn. Stat. § 181.03 (prohibiting employers from retaliating against employees).

The plaintiff bears the burden to show he is an employee under both the federal and state statutes. *See Reich v. ConAgra, Inc.*, 987 F.2d 1357, 1360 (8th Cir. 1993); *cf. Carpenter v. Nelson*, 101 N.W.2d 918, 921 (Minn. 1960) ("In the ordinary civil action, . . . the plaintiff has the burden of proving every essential element of his case . . . .").

II

Courts have determined a worker's status under these acts by looking to the "economic reality" of the situation. *See Tony & Susan Alamo Found. v. Sec'y of Lab.*, 471 U.S. 290, 294 (1985) (discussing FLSA); *In re Kokesch*, 411 N.W.2d at 562 (discussing MFLSA). To analyze that economic reality, courts have considered the following factors:

> (i) the degree of control exercised by the alleged employer over the business operations; (ii) the relative investments of the alleged employer and employee; (iii) the degree to which the employee's opportunity for profit and loss is determined by the employer; (iv) the skill and initiative required in performing the job; (v) the permanency of the relationship; and (vi) the

> degree to which the alleged employee's tasks are integral to the
> employer's business.

*Karlson*, 860 F.3d at 1093; *accord Walsh v. Alpha & Omega USA, Inc.*, 39 F.4th 1078, 1082

(8th Cir. 2022); *see In re Kokesch*, 411 N.W.2d at 562 (applying the test to the MFLSA).

While deciding the economic reality requires a close factual examination, the

question whether an individual is an employee is ultimately a legal matter. *Karlson*, 860

F.3d at 1092–93. Under the FLSA, "if the court conducts a jury trial and obtains from the

jury special findings regarding one or more of the 'economic realities' factors . . . , those

findings will be reviewed for clear error," *id.* at 1094, but the district court "may not ignore

its duty to review" de novo a jury's determination that an individual was an employee or

independent contractor, *Ernster v. Luxco, Inc.*, 596 F.3d 1000, 1006 (8th Cir. 2010).

The Minnesota Supreme Court has not adopted this rule for the MFLSA or MPWA,

but several reasons lead me to conclude it would. First, as explained above, the MFLSA

and FLSA are broadly similar, and the MPWA is to be interpreted in light of the MFLSA.

Courts have consistently analyzed the employee-versus-independent-contractor question

by borrowing from federal precedent, *see In re Kokesch*, 411 N.W.2d at 562; *Wang v. Jessy

Corp.*, No. 17-cv-5069 (JRT/HB), 2020 WL 3618596, at *4–6 (D. Minn. July 2, 2020)

(applying six-factor test); *Catani v. Chiodi*, No. 00-cv-1559 (DWF/RLE), 2001 WL

920025, at *3 (D. Minn. Aug. 13, 2001) (same), so it would be consistent to borrow the

federal evidentiary standard as well. Second, the Minnesota Court of Appeals has treated

the question "[w]hether a worker is an employee or an independent contractor" under the

MFLSA as "a mixed question of law and fact." *Muhonen*, 2014 WL 1660711, at *2. That

rule is well-established in two related contexts—unemployment insurance and workers' compensation.[1]  *See Hochstein v. Video Surveillance Sols., Inc.*, No. A15-0387, 2015 WL 8548990, at *2 (Minn. Ct. App. Dec. 14, 2015); *Darvell v. Paul A. Laurence Co.*, 57 N.W.2d 831, 834 (Minn. 1953).  As courts have explained, under the mixed standard, "determining whether the evidence supports the findings of fact is a question of fact, but then determining whether the facts rise to the level of misconduct is a legal issue upon which [a] court exercises independent judgment."  *Neve v. Austin Daily Herald*, 552 N.W.2d 45, 47 (Minn. Ct. App. 1996) (citing *Ress v. Abbott Nw. Hosp., Inc.*, 448 N.W.2d 519, 523 (Minn. 1989)).  In the unemployment context, "[w]hether an employment relationship exists . . . is purely a question of law."  *Hochstein*, 2015 WL 8548990, at *2.  Similarly, in the workers' compensation context, "[w]here the evidence is free from conflict as to the controlling facts, the question of whether a person is an employe becomes one of law."  *Darvell*, 57 N.W.2d at 834 (spelling original); *see Farnam v. Linden Hills Congregational Church*, 149 N.W.2d 689, 693 (Minn. 1967).  This approach is consistent with *Karlson*'s analytical framework, in which district courts review de novo the legal question and may rely on the jury's findings of fact.  *See Karlson*, 860 F.3d at 1092–93. Finally, the parties have not cited any authority for taking a different approach, and I have

---

[1]    The Minnesota Supreme Court has applied a different rule in one other context— the distinction between independent contractors and government employees for purposes of liability.  In several old cases it treated that issue as a question of fact for the jury.  *See Gill v. Nw. Airlines, Inc.*, 36 N.W.2d 785, 788 (Minn. 1949); *Barnes v. Nw. Airlines, Inc.*, 47 N.W.2d 180, 190 (Minn. 1951).  Because I have found no case applying this rule to the MFLSA context, and because the case law pre-dates the enactment of the MFLSA, *see* Minnesota Fair Labor Standards Act, 1973 Minn. Laws, ch. 721, I am not persuaded that the Minnesota Supreme Court would apply the *Gill* and *Barnes* rule here.

not found any.  I predict it's likely the Minnesota Supreme Court would follow the majority approach to the FLSA in construing the MFLSA and MPWA.

Here, the jury was instructed to determine whether Mr. Li was an employee or independent contractor, and to make special findings relevant to the economic-reality test. *See* ECF No. 105 at 1–2 (special verdict form); ECF No. 106 at 15–16 (jury instruction number 10).  The jury concluded that Mr. Li was an employee.  ECF No. 105 at 2.  As to the special findings, however, it found that (1) Mr. Li was not required to report to work at 10:40 in the morning; (2) he did not work a set daily schedule;[2] (3) he controlled the means and manner of delivering food; and (4) he was paid more in tips by customers than he was paid for his services by Defendant New Asia.  *Id.* at 1.

In reviewing de novo the jury's conclusion regarding Mr. Li's employment status, I rely on the jury's special findings relevant to the economic reality test, which I accept unless clearly erroneous.  *See Ernster*, 596 F.3d at 1005; *Willis v. Henderson*, 262 F.3d 801, 808 (8th Cir. 2001) ("Under this standard, findings of fact will only be set aside when, if there is some evidence to support the findings, the reviewing court on the entire record is left with a 'definite and firm conviction that a mistake has been committed.'" (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985))).  Those special findings did

---

[2]    It seems possible to interpret this statement in two ways—that Mr. Li set his own schedule, or that someone else scheduled him to work irregular hours that varied day to day.  The better answer is that Mr. Li had a significant degree of control over his own schedule.  There is testimony to support that idea, *see* Tr. [ECF Nos. 119–20] 123:1–12, 146:23–24 ("If he want[ed] to deliver, he would come in."), and no one testified that Mr. Li was required to work various, irregular shifts—including Mr. Li, who testified that he worked daily from 10:00 a.m. to 10:00 p.m., Tr. 73:1–10.

not, however, address all the factors of the economic reality test. So in determining the ultimate question of Mr. Li's employment status, I must also consider the evidence presented at trial and determine the weight of evidence as to each factor. Conducting de novo review in this situation is like conducting a bench trial as to some issues and a jury trial as to others. *See L.M.P. ex rel. E.P. v. Sch. Bd. of Broward Cnty.*, No. 05-60845-CIV, 2014 WL 4771750, at *14 (S.D. Fla. Sep. 24, 2014). This approach is fair to the parties. Though Mr. Li demanded a jury trial, *see* ECF No. 1 at 1, he understood the issue of his employment status was a legal question and consented for the Court to rule on it without any special interrogatories. Tr. [ECF Nos. 119–20] 98:23–99:10. Mr. Lin and New Asia proposed the special interrogatories relating to the six factors, and Mr. Li was offered the opportunity to challenge them and suggest additional interrogatories, which he declined. *See* Tr. 191:2–193:14; *cf. Mayfield v. Mo. House of Representatives*, 122 F.4th 1046, 1055 (8th Cir. 2024) (affirming judgment as a matter of law against party who failed to submit jury instructions on matter of alleged factual dispute). Finally, when the parties were given the opportunity to brief the question of Mr. Li's employment status after trial, Mr. Li's memorandum relied heavily on evidence presented at trial. *See* ECF No. 140 at 8–10.

III

After reviewing the jury's special findings for clear error and weighing the evidence presented at trial, I find that Mr. Li was an independent contractor.

1. *Degree of employer's control.* "[T]his factor considers the alleged employer's right to control the way work is performed." *Walsh*, 39 F.4th at 1083. "While not dispositive, this factor is highly relevant to the FLSA analysis." *Razak v. Uber Techs., Inc.*,

951 F.3d 137, 145 (3d Cir. 2020). Control over delivery drivers can be demonstrated when an employer acts "by assigning trips, pressuring drivers to accept trips . . . , regulating the times at which drivers could provide services, requiring the drivers to obtain permission to take a break, tracking drivers through GPS location monitoring, and requiring drivers to submit travel logs." *Walsh*, 39 F.4th at 1083. An employee's being "on-call" is evidence of employer control, *see Herman v. Express Sixty-Minutes Delivery Serv., Inc.*, 161 F.3d 299, 303 (5th Cir. 1998), as are drivers' inability to determine their own routes or refuse deliveries, and the requirement that the drivers wear company uniforms and display company logos on their vehicles, *see Krupicki v. Eagle One, Inc.*, No. 4:12-cv-00150 KGB, 2014 WL 12710353, at *4 (E.D. Ark. Apr. 3, 2014) (refusing deliveries); *Flores v. Velocity Express, LLC*, 250 F. Supp. 3d 468, 482–83 (N.D. Cal. 2017) (uniform and identification badges evidence of control). Drivers' ability to set their daily schedule is evidence against control, *see Walsh*, 39 F.4th at 1084, and so is their ability to set their own routes, *see Arunin v. Oasis Chi. Inc.*, No. 14 cv 6870, 2016 WL 851989, at *3 (N.D. Ill. Mar. 4, 2016).

This factor strongly favors independent-contractor status. The jury found three facts significant to this determination. First, Mr. Li was not required to report to work at 10:40 a.m. ECF No. 105 at 1. Second, he did not work a set daily schedule. *Id.* And third, he controlled the means and manner of delivering food. *Id.* These findings were not clearly erroneous—there was evidence to support the jury's findings, *see, e.g.*, Tr. 84:5–12, 115:2–4, 124:18–20, 145:15–146:19, and I have no definite and firm conviction that the jury was mistaken. On the contrary, I would have reached these same findings. The jury's findings—particularly the conclusion that Mr. Li had no set daily schedule and that he

controlled the means and manner of delivery—support a low degree of control. As *Walsh* recognized, a driver's autonomy in setting a schedule is evidence against employee status. *See* 39 F.4th at 1084. Mr. Li's control over the means and manner of food delivery implies a significant degree of independence in selecting routes. *See Arunin*, 2016 WL 851989, at \*3. On this crucial factor, the jury's special findings support independent-contractor status.

Further, Mr. Li did not present the kind of evidence that courts typically assess to determine control. There is no evidence that Mr. Li was unable to reject deliveries without repercussion. New Asia did not regulate the times during which he could provide services, other than setting normal operating hours. *See* Tr. 166:16–167:19. Mr. Li was not required to submit travel logs. There is no evidence New Asia regulated his break time.[3] Nor is there any evidence that New Asia required a uniform or vehicle branding.

The pertinent evidence that Mr. Li did produce was vague, nonresponsive, or unpersuasive. For instance, when asked how Mr. Lin supervised his work, Mr. Li replied, "He direct[s] all the jobs in the restaurant." Tr. 82:19–21. When asked if Mr. Lin told him which orders to deliver, Mr. Li testified, "he told me my job is [to] package the food and deliver it to the customers." Tr. 82:22–25. And when asked whether there was a "specific policy that [he] could not leave," Mr. Li testified, "If this is the working hour,

---

[3]     Mr. Li testified that he worked twelve-hour days, six days a week, Tr. 73:1–10, and that he never took a break for meals or coffee, Tr. 74:17–23. I find this testimony not credible. In addition to the testimony's general implausibility, the evidence showed that there were times when orders were not ready for delivery, Tr. 83:14–17, and that on some days Mr. Li completed as few as eighteen deliveries, Def. Ex. 2; Tr. 149:11–15. That would have left him ample downtime.

automatically." Tr. 83:23–84:1. Those answers provide too little information to support the degree of control indicative of an employment relationship, and they are consistent with Mr. Li being an independent contractor. Mr. Li also stated he had "no choice" which route to take. Tr. 117:14–16. But he presented no evidence that New Asia instructed him on the routes he could take, or that he was tracked while making deliveries. *See Walsh*, 39 F.4th at 1081. The jury apparently did not credit this testimony, since it found that Mr. Li controlled the means and manner of delivering food. ECF No. 105 at 1. Mr. Li testified that when there were no orders to deliver, he would "[p]repare anything else: food, ingredients, packaging." Tr. 83:18–19; *see* Tr. 82:24–25 (Mr. Li's testimony that Mr. Lin told him his job was to "package the food and deliver it to the customers"). The evidence that Mr. Li performed non-delivery tasks is too sparse to make a significant difference in evaluating control. What's more, some of Mr. Li's own testimony supports an inference of independent-contractor status. For example, he testified that that Mr. Lin never took his attendance or monitored his job performance. Tr. 83:1–3.

There is competing testimony over how deliveries were assigned, and I conclude that, in this area, Defendants exerted a low degree of control. When asked how he knew which orders to deliver, Mr. Li responded, "It is written on the order if it's a delivery or not delivery. I have no choice." Tr. 83:6–9. His counsel followed up, "So when the deliver[y] orders came to the restaurant, who would give you the orders to deliver?" Tr. 83:10–11. Mr. Li answered that orders would show up on a computer screen, and the drivers would "look at the screen and . . . start packaging the delivery." Tr. 83:12–13. He did not testify that orders were specifically assigned for him; instead, orders appeared a computer screen

available to all New Asia's drivers, and an available driver could deliver it. *See* Tr. 116:5–117:5. On this view, Mr. Li was not directly assigned deliveries; he was part of a slate of potential drivers. That suggests that New Asia and Mr. Lin did not impose a high degree of control over delivery assignments. New Asia's cashier, Xingsheng Zhuo, testified about a different procedure: When an order came in, Mr. Zhuo would call or text Mr. Li for delivery. Tr. 145:20–146:8. Mr. Zhuo explained that Mr. Li would not always answer the phone or respond to text messages, so Mr. Zhuo would "text another driver or the boss [Mr. Lin] will deliver by himself." Tr. 146:14–19. On this view, Mr. Li's work seems best characterized as on-call. *See* Tr. 123:1–5 (Mr. Lin's testimony that if "I call [Mr. Li], [and] he will come"). Here, that on-call requirement is undercut by other evidence that control was minimal, including that Mr. Li did not always respond to delivery requests. *See Herman*, 161 F.3d at 303 (noting on-call status did not outweigh other factors). So although the exact nature of New Asia's delivery-assignment protocol seems hard to pin down, the best read of the evidence is that the restaurant exerted little control over delivery assignments.

Lastly, the facts supporting employee status are few and insignificant. Mr. Li argues that New Asia determined his compensation rate and his pick-up and delivery locations, making employment status more likely. ECF No. 140 at 14. This is not persuasive. While Mr. Lin set Mr. Li's gas payments and monthly compensation rate, *see* Tr. 84:9–11, 85:9–15, the jury found these earnings were smaller than the amount Mr. Li earned in tips, *see* ECF No. 105 at 1. And Mr. Li's lack of a set daily schedule suggests that he had the ability to increase his tips by working more, which implies a low degree of control. Further, it is

nearly irrelevant that New Asia set his pick-up and delivery locations; the nature of the business is that deliveries start at the restaurant and end at the customer's address. On balance, this significant factor strongly favors a finding that Mr. Li was an independent contractor.

2. *Relative investments of employer and employee.* This factor "compare[s] each worker's *individual* investment to that of the alleged employer." *Hopkins v. Cornerstone Am.*, 545 F.3d 338, 344 (5th Cir. 2008) (second alteration in original). In the context of delivery drivers, courts consider whether the workers provided their own equipment, *Wang*, 2020 WL 3618596, at *5, and whether they covered the costs of fuel, maintenance, and vehicle depreciation, *Herman*, 161 F.3d at 303. "To the extent the putative employee made a disproportionately small investment in the venture as compared to the putative employer, she is more likely to be economically dependent on that entity or individual." *Callahan v. City of Chicago*, 78 F. Supp. 3d 791, 812 (N.D. Ill. 2015).

As to the relative investments, this factor favors independent-contractor status. Mr. Li used his own car for deliveries. Tr. 115:5–10. That is by far the largest expense to consider. New Asia did pay Mr. Li gas money, *id.* at 113:16–17, but there is no evidence that the restaurant covered or defrayed the costs of maintenance and depreciation. Nor is there evidence that New Asia provided Mr. Li any of the tools of his trade or equipment. It's true that beyond the delivery car, Mr. Li's investment was limited, or at least mostly unknown. Although he owned and maintained his car, there is no evidence in the record to suggest specialized equipment was needed to deliver food for New Asia. *See Herman*, 161 F.3d at 303 (finding investment significant when "drivers were required to purchase or

lease all the necessary tools of the trade including a vehicle, automobile insurance, dolly, MAPSCO, tarp, two-way radio, pager, and a medical delivery bag"). Still, because the car is by far the most important and expensive piece of equipment necessary in Mr. Li's line of work, and he provided it, the balance of the evidence concerning this factor supports independent-contractor status.

3. *Opportunities for profit and loss.* "Under this factor, courts generally consider whether workers had control over profits and losses depending on their 'managerial skill.'" *Walsh*, 39 F.4th at 1084 (quoting *Verma v. 3001 Castor, Inc.*, 937 F.3d 221, 231 (3d Cir. 2019)). "A worker exercising managerial skills such as setting his own hours and rates along with the ability for the worker to earn additional income through his own initiatives indicate control over profits and losses." *Id.* (first citing *Razak*, 951 F.3d at 146; and then citing *Scantland v. Jeffry Knight, Inc.*, 721 F.3d 1308, 1317 (11th Cir. 2013)). Receiving a flat rate restricts one's ability to turn a profit, so it favors control. *See Wang*, 2020 WL 3618596, at *5. While tips expand a worker's ability to generate profits, the relevant question is whether the tips depend on the worker's managerial skill. *See Callahan*, 78 F. Supp. 3d at 798 (noting possible ways taxi drivers could entertain passengers and thereby increase tips); *Arunin*, 2016 WL 851989, at *4 (noting that profit or loss from tips did not depend on the drivers' "initiative, judgment, and energy" (quoting *United States v. Silk*, 331 U.S. 704, 716 (1947))); *cf. Dole v. Snell*, 875 F.2d 802, 810 (10th Cir. 1989) (finding that cake bakers' "earnings did not depend upon their judgment or initiative, but on the [defendant's] need for their work").

14

As to the degree of profit and loss, this factor favors employee status. Mr. Li received a flat monthly rate for his work, and he had no control over that pay. His ability to increase his earnings from tips was limited by his lack of control over the orders he delivered, such as "the food that customers order," the "amount charged" and the number of deliveries. *Cf. Arunin*, 2016 WL 851989, at *4. Further, though the jury determined he earned more from tips than from his wage, *see* ECF No. 105 at 1, the evidence presented suggests only one way he could control his profit—by making more deliveries, *see* Tr. 147:1–21. That is relevant to degree of control, but less relevant to opportunity for profit and loss, which asks if managerial skills or judgment played a role. To the extent that working longer is evidence of initiative or energy, the case law on tips and wages suggests something more is necessary to show managerial skill.

4. *Specialized skills.* "The more specialized the skills required to perform the job, the more likely it is that the individual is an independent contractor." *O'Dell v. QualScript, LLC*, No. 4:21-CV-00260-LPR, 2023 WL 2666153, at *20 (E.D. Ark. Mar. 28, 2023). Delivery-driver cases consider whether the worker "must rely on his own judgment, knowledge of traffic patterns and road conditions," *Herman*, 161 F.3d at 305, as driving by itself is usually not considered a specialized skill, *id.*; *Razak*, 951 F.3d at 143; *Alexander v. FedEx Ground Package Sys., Inc.*, 765 F.3d 981, 995 (9th Cir. 2014); *Sakacsi v. Quicksilver Delivery Sys., Inc.*, No. 8:06-cv-1297-T-24-MAP, 2007 WL 4218984, at *7 (M.D. Fla. Nov. 28, 2007).

This factor slightly favors employee status for the simple reason that the evidence available suggests the only skill involved was driving, which is not a specialized skill, but

the evidence regarding this factor was sparse.  It is true that in their initial discussions, Mr.

Lin told Mr. Li that New Asia "need[ed] a long-term skilled worker."  Tr. 80:8–9.  Mr. Li

testified that he was an experienced delivery driver, having worked in the industry more

than ten years.  *Id.* at 109:12–20.  The jury found that he controlled the manner and means

of delivery, ECF No. 105 at 1, which would have required familiarity with roads and routes

within at least a five-mile radius, his typical delivery destination, *see* Tr. 89:1–6.  This

implication does not significantly change the analysis.  Without more facts about the nature

of Mr. Li's work, I conclude that delivery services primarily involved driving and did not

require specialized skills.  But because the evidence was limited, and because some of the

testimony suggests skill and experience were involved, this factor bears little weight.

    5.  *Permanency of the relationship.*  "The more permanent the relationship, the more

this factor weighs in favor of employment rather than independent contracting."  *Arunin*,

2016 WL 851989, at *4.  "[C]ourts have considered whether the work was for a fixed term,

the exclusivity of the individual's relationship with the company, and whether the amount

of work fluctuated."  *O'Dell*, 2023 WL 2666153, at *20.  A work period of two years

generally supports an employment relationship, especially when it is exclusive.  *See*

*Robicheaux v. Radcliff Material, Inc.*, 697 F.2d 662, 666–67 (5th Cir. 1983) (finding

welders who worked exclusively for one company for periods ranging between ten months

and three years were employees).  As to exclusivity, courts look to the "economic reality"

of the relationship, "not economic hypotheticals," *Parrish*, 917 F.3d at 387, so an employee

who is allowed to contract with others but as a practical matter cannot do so is more likely

to be an employee, *see Olukayode v. UnitedHealth Grp.*, No. 19-cv-1101 (DSD/HB), 2021

WL 3293648, at *11 (D. Minn. Aug. 2, 2021). Courts have disagreed whether an at-will agreement supports the worker's independent-contractor or employee status. *Contrast Nichols v. All Points Transp. Corp. of Mich.*, 364 F. Supp. 2d 621, 631 (E.D. Mich. 2005) (finding that agreement was not permanent because it was "terminable at any time by either party"), *with Arunin*, 2016 WL 851989, at *4 ("This factor weighs in favor of plaintiffs being employees since they are hired to do the job indefinitely.").

As to the degree of permanence, this factor slightly favors employee status. The jury found that Mr. Li worked for New Asia in April 2020, ECF No. 105 at 2, and he was terminated in April 2022, Tr. 85:16–19. The undisputed evidence shows that he worked for New Asia exclusively during those two years. Tr. 84:2–4. Mr. Li understood himself to be a "long-term worker," having moved to Minnesota from South Carolina for the job. Tr. 81:17, 96:15–22. The strength of this evidence is somewhat diminished by the absence of a written contract, so there is no evidence whether his work was contractually exclusive, or how long it was expected to last. It appears that Mr. Li's agreement was at-will. *See Fox v. T-H Cont'l Ltd. P'ship*, 78 F.3d 409, 413 (8th Cir. 1996) ("There is a 'strong presumption' of at-will status in Minnesota." (quoting *Spanier v. TCF Bank Sav.*, 495 N.W.2d 18, 21 (Minn. Ct. App. 1993))). Additionally, there is some evidence deliveries fluctuated. *See* Tr. 83:14–17 (noting that "sometimes we don't have any order[s] in"); Tr. 113:22–24 (stating his amount of pay depended on "delivery frequencies"). The paucity of evidence means that this factor weighs little in the ultimate analysis, but to the extent it matters, it favors employee status, simply by the length and practical exclusivity of the term.

6. *Integral to the business.* "This factor turns 'on whether workers' services are a necessary component of the business.'" *Walsh*, 39 F.4th at 1085 (quoting *Acosta v. Paragon Contractors Corp.*, 884 F.3d 1225, 1237 (10th Cir. 2018)). Some courts have found that the mere fact that a restaurant offers delivery service makes delivery "an integral part of their business." *Arunin*, 2016 WL 851989, at *4; *Campos v. Zopounidis*, No. 3:09-cv-1138 (VLB), 2011 WL 2971298, at *8 (D. Conn. July 20, 2011) ("It cannot be seriously disputed that the job of a delivery person for a restaurant that provides delivery services is integral to the business."). Other courts have found that when a business could use other drivers to make deliveries, the degree to which this factor supports employee status was reduced. *See Velu v. Velocity Express, Inc.*, 666 F. Supp. 2d 300, 307 (E.D.N.Y. 2009); *Hernandez v. Fresh Diet, Inc.*, No. 12-cv-4339 (ALC) (JLC), 2014 WL 5039431, at *4 (S.D.N.Y. Sep. 29, 2014) ("[T]he significance of the integral nature of the drivers' work is mitigated by the interchangeability of the drivers themselves.").

This factor is neutral. Accepting that food deliveries are integral to a restaurant offering them, I find the evidence that Mr. Li's services were integral to New Asia's business to be modest and speculative. Mr. Li testified that, while he worked at New Asia, the restaurant received over one hundred delivery orders every day. Tr. 88:19–25. But the evidence that New Asia would have struggled to manage that volume of deliveries without Mr. Li's services is speculative. New Asia presented evidence that, on two separate days, Mr. Li made 18 and 27 deliveries. Def. Exs. 2–3. It is not clear whether those numbers represent typical days, or days with a high or low number of orders. If they are typical, and if New Asia really made north of 100 deliveries per day, Tr. 88:18–21, then Mr. Li

18

performed a smaller fraction of the total work. In any case, Mr. Li did not introduce evidence supporting the inference that New Asia would have struggled to make about two dozen deliveries without his services. The parties agree that there were other drivers— between two and five, according to Mr. Li, Tr. 116:20–117:7, and "many," according to Mr. Zhuo, Tr. 146:10. There is little evidence about the time it took to make a delivery, but it was presumably not very long, as most trips stayed within a five-mile radius of the restaurant. Tr. 89:1–6. Under either view of the delivery-assignment system, Mr. Li's work could be replaced by other drivers, some of whom were unquestionably not employees. *See* Tr. 116:20–117:1 (other delivery drivers at New Asia); Tr. 135:9–13 (Uber Eats); Tr. 146:14–19 (Mr. Lin). Additionally, the jury's findings that Mr. Li did not work a set schedule supports the conclusion that New Asia did not need Mr. Li's services at any given time. The restaurant could find other ways to deliver orders if Mr. Li chose not to work those particular hours, so this factor favors Mr. Li to a very small degree. While delivery services are integral to New Asia's business, favoring employee status, the mitigating evidence greatly reduces this factor's relevance.

*

The jury findings and the evidence at trial more strongly support the conclusion that Mr. Li was an independent contractor and not an employee. While two factors favor independent-contractor status (degree of control and relative investments), three favor employee status (opportunity for profit and loss, skill and initiative, and permanence of the relationship), and one is neutral (integral to the business), the factors do not all weigh equally. The first factor, degree of control, is in general "arguably most important," *O'Dell*,

19

2023 WL 2666153, at *18, and "highly relevant to the FLSA analysis," *Razak*, 951 F.3d at 145; *see Hernandez*, 2014 WL 5039431, at *5 (finding degree of control "a vital, if not decisive, consideration"). It is the most critical factor here, and on balance weighs strongly in favor of independent-contractor status. While some of the other factors present a closer call, degree of control does not. On the other side, two of the factors favoring employee status weigh very little. The considerations supporting employee status are mitigated by countervailing facts—Mr. Li's experience as a delivery driver suggests some skill was involved, and the absence of a contract undermines the permanence of the relationship. The more decisive factor in Mr. Li's favor—opportunity for profit and loss—is not significant weighed against the degree of control and relative investments. *Cf. Alexander*, 765 F.3d at 997 (finding that right-to-control strongly favored employee status and was not outweighed by factors that weakly supported independent-contractor status). I conclude that Mr. Li was an independent contractor for New Asia.

Because Mr. Li's claims under the FLSA, MFLSA, and MPWA cannot be sustained if he is an independent contractor, judgment will be entered in Defendants' favor. In addition, the Clerk's entry of default against New Asia will be set aside. Under the Federal Rules, "[t]he court may set aside an entry of default for good cause." Fed. R. Civ. P. 55(c). To determine whether good cause exists, courts consider "whether the conduct of the defaulting party was blameworthy or culpable, whether the defaulting party has a meritorious defense, and whether the other party would be prejudiced if the default were excused." *Johnson v. Dayton Elec. Mfg. Co.*, 140 F.3d 781, 784 (8th Cir. 1998). Courts determine whether a meritorious defense exists by considering "whether the proffered

evidence 'would permit a finding for the defaulting party.'"  *Id.* at 785 (quoting *Augusta Fiberglass Coatings, Inc. v. Fodor Contracting Corp.*, 843 F.2d 808, 812 (4th Cir. 1988)));  *accord Stephenson v. El-Batrawi*, 524 F.3d 907, 914 (8th Cir. 2008).  New Asia has something much stronger than the possibility of a finding in its favor—it cannot be liable under the sued-on claims because it was not Mr. Li's employer.  *See Karlson*, 860 F.3d at 1094; *cf. Mohamad v. Rajoub*, 634 F.3d 604, 606, 610 (D.C. Cir. 2011) (affirming decision to set aside entry of default where district court found plaintiffs had no cause of action).  Because the entry of default will be set aside, it follows that default judgment against New Asia will not be entered.

## ORDER

Based on the foregoing, and on all the files, records, and proceedings herein, **IT IS ORDERED THAT**:

1.     The Clerk's Entry of Default against Defendant New Asia Chinese Restaurant Wan Da Inc. [ECF No. 136] is **VACATED**.

2.     Judgment shall be entered in favor of Defendants New Asia Chinese Restaurant Wan Da Inc. and Defendant Hong Sheng Lin.

### LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated:  July 23, 2025                              s/ Eric C. Tostrud
                                                   Eric C. Tostrud
                                                   United States District Court